Jayne Conroy
Thomas I. Sheridan, III
Andrea Bierstein
Justin Presnal
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, NY 10016
(212) 784-6401
jconroy@simmonsfirm.com
tsheridan@simmonsfirm.com
abierstein@simmonsfirm.com
jpresnal@simmonsfirm.com

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE CITY OF NEW YORK; COUNTY OF SUFFOLK, NEW YORK; COUNTY OF BROOME, NEW YORK; COUNTY OF COLUMBIA, NEW YORK; COUNTY OF DUTCHESS, NEW YORK; COUNTY OF ERIE, NEW YORK; COUNTY OF FULTON, NEW YORK; COUNTY OF GREENE, NEW YORK; COUNTY OF HERKIMER, NEW YORK; COUNTY OF LEWIS, NEW YORK; COUNTY OF MONROE, NEW YORK; COUNTY OF MONTGOMERY, NEW YORK; COUNTY OF ONTARIO, NEW YORK; COUNTY OF ORANGE, NEW YORK; COUNTY OF OSWEGO, NEW YORK; COUNTY OF SCHENECTADY, NEW YORK; COUNTY OF SENECA, NEW YORK; COUNTY OF ST. LAWRENCE, NEW YORK; COUNTY OF SULLIVAN, NEW YORK; COUNTY OF ULSTER, NEW YORK; COUNTY OF WASHINGTON, NEW YORK; AND COUNTY OF WYOMING, NEW YORK, | Case No.: 3:21-cv-05183-CRB |
| | |
| Plaintiffs, | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR REMAND OR ABSTENTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| MCKINSEY & COMPANY, INC. and MCKINSEY & COMPANY, INC. UNITED STATES, | |
| Defendants. | |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 13, 2021, at 10:00 a.m. pacific time, or as soon thereafter as counsel may be heard, in the courtroom of the Hon. Charles R. Breyer of the United States District Court of the Northern District of California, San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiffs the City of New York, the County of Suffolk, New York, the County of Broome, New York, the County of Columbia, New York, the County of Dutchess, New York, the County of Erie, New York, the County of Fulton, New York, the County of Greene, New York, the County of Herkimer, New York, the County of Lewis, New York, the County of Monroe, New York, the County of Montgomery, New York, the County of Ontario, New York, the County of Orange, New York, the County of Oswego, New York, the County of Schenectady, New York, the County of Seneca, New York, the County of St. Lawrence, New York, the County of Sullivan, New York, the County of Ulster, New York, the County of Washington, New York, and the County of Wyoming, New York, (collectively, "Plaintiffs"), by their counsel Simmons Hanly Conroy LLC, will move for entry of an order pursuant to 28 U.S.C. § 1334(c), § 1447, and § 1452, granting Plaintiff's Motion for Remand or Abstention.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the accompanying declaration and exhibits thereto, and the Proposed Order lodged herewith.

Dated: July 9, 2021

Respectfully submitted,

**SIMMONS HANLY CONROY**

/s/ Jayne Conroy
Jayne Conroy
Thomas I. Sheridan, III
Andrea Bierstein
Justin Presnal
SIMMONS HANLY CONROY LLC
112 Madison Avenue

New York, NY 10016
(212) 784-6401
jconroy@simmonsfirm.com
tsheridan@simmonsfirm.com
abierstein@simmonsfirm.com
jpresnal@simmonsfirm.com

*Counsel for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................iv

TABLE OF AUTHORITIES ......................................................................................... v

SUMMARY OF THE ARGUMENTS ......................................................................vii

BACKGROUND ............................................................................................................1

LEGAL STANDARD......................................................................................................2

ARGUMENT ..................................................................................................................3

I.    Removal of Plaintiffs' Action is Precluded Under 28 U.S.C. § 1452(a) .................................. 3

II.   This Court Does Not Have Subject Matter Jurisdiction Over the Action................................. 4

    A.    McKinsey's indemnification claims do not support the exercise of "related to" jurisdiction because McKinsey has no reasonable legal basis for those claims. .............. 5

    B.    McKinsey's contribution claims do not support the exercise of "related to" jurisdiction because McKinsey has no reasonable legal basis for those claims.................................. 8

    C.    McKinsey's mere status as a joint tortfeasor with Purdue does not give rise to "related to" jurisdiction.................................................................................................. 10

III. Alternatively, This Court Should Abstain and Remand the Claims Against McKinsey. ........ 13

    A.    Section 1334(c)(2) requires mandatory abstention in this case. .................................... 13

    B.    This Court should exercise its discretion to permissively abstain from hearing the Action and/or equitably remand the Action. ...................................................................... 14

CONCLUSION .......................................................................................................................16

**Cases**

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC)*,
    No. 11 Civ. 2232 (NRB), 2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011)..................................7

*Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*,
    405 F. Supp. 3d 947 (D. Colo. 2019) ............................................................................4

*Bd. of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*,
    517 N.E.2d 1360 (N.Y. 1987) .......................................................................................9

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)...........................................................5

*City & County of San Francisco v. PG & E Corp.*, 433 F.3d 1115 (9th Cir. 2006) ......3

*Contra Costa County v Fitch, Inc.*, No. C 10-05318 JSW, 2011 WL 13247847
    (N.D. Cal. Jan. 31, 2011) ...............................................................................................5

*Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934 (N.D. Cal. 2018)................3

*Dillon v. Peak Envtl., LLC*, 173 A.D.3d 1637 (N.Y. App. 2019) .................................8

*Duncan v. Stuetzle*, 76 F.3d 1480 (9th Cir.1996) .........................................................2

*Gaus v. Miles, Inc.*, 980 F.2d 564 (9th Cir. 1992) .......................................................3

*Haas v. Tishman Const. Corp. of New York*, No. 83 CIV. 7601 (CBM),
    1987 WL 5792 (S.D.N.Y. Jan. 13, 1987).......................................................................9

*Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689 (9th Cir. 2005)............................2

*Hills Motor, Inc. v. Hawaii Auto. Dealrs' Ass'n*, 997 F.2d 581 (9th Cir. 1993) ..........3

*Homes Ins. Co. v. Cooper & Cooper Ltd.*, 889 F.2d 746 (7th Cir. 1989)....................11

*Hunter v. Philip Morris USA*, 582 F.3d 1039 (9th Cir. 2009) .....................................2

*In re AMR Corp.*, 492 B.R. 660 (Bankr. S.D.N.Y. 2013) ...........................................10

*In re Enron Corp.*, 419 F.3d 115 (2d Cir. 2005)..........................................................10

*In re Grossman's Inc.*, 607 F.3d 114 (3d Cir. 2010).....................................................6

*In re Harris Pine Mills*, 44 F.3d 1431 (9th Cir. 1995).................................................13

*In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, No.
    MDL 2996, 2021 WL 2351628 (U.S. Jud. Pan. Mult. Lit. June 7, 2021) .....................2

*In re Motors Liquidation Co. ("Motors")*, 598 B.R. 744 (Bankr. S.D.N.Y. 2019)............... 6, 9, 10

*In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (U.S. Jud. Pan. Mult. Lit. 2017)....... 1

*In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) .... 14

*In re Opioid Litigation*, No. 400000/2017, 2019 WL 2996570 (N.Y. Sup. Ct. June 21, 2019) .... 14

*In re Opioid Litigation*, No. 400000/2017, 2020 WL 8011988 (N.Y. Sup. Ct. Feb. 03, 2020) .... 14

*In re Purdue Pharma L.P.*, 619 B.R. 38, 52-55 (S.D.N.Y. 2020) ......................... 7, 11, 12

*In re SunEdison, Inc.*, 576 B.R. 453 (Bankr. S.D.N.Y. 2017) ........................................7

*In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir. 1990)...........................................15

*In re Valdez Fisheries Development Ass'n, Inc.*, 439 F.3d 545 (9th Cir. 2006) .......................... 4, 5

*In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308 (Bankr. S.D.N.Y. 2003) ........................ 7, 11

*Kennilworth Partners II LP v. Crisman*, No. C-00-3218 VRW, 2001 WL 30534
    (N.D. Cal. Jan. 3, 2001) .......................................................................................................... 13, 14

*Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'Ship,* No. 4 Civ. 708(GEL),
    04 Civ. 709(GEL), 04 Civ. 710(GEL), 2004 WL 1048239 (S.D.N.Y. May 7, 2004) .............. 15

*Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538 (D. Md. 2019) ................ 4

*MBIA Insurance Corporation v Indymac ABS, Inc. ("MBIA"),* No. CV 09-07737 SJO
    (PJWx), 2009 WL 10675774 (C.D. Cal. Dec. 23, 2009) ....................................................... 6, 8

*McMillan v. Barclays Bank PLC,* No. 1:13-cv-01095 (ALC) (DF), 2014 WL 4364053
    (S.D.N.Y. Sept. 3, 2014) ............................................................................................................ 11

*N.A.A.C.P. v. Acusport Corp.*, 226 F. Supp. 2d 391 (E.D.N.Y. 2002) ........................................... 8

*New York v. W. Side Corp.*, 790 F. Supp. 2d 13 (E.D.N.Y. 2011)................................................... 8

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365 (1978) ....................................................... 2

*Pioneer Inv. Services Co. v. Brunswick Associates ltd. Partnership,* 507 U.S. 380 (1993) ........... 6

*Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397 (LTS) (HBP),
    2012 WL 4794450 (S.D.N.Y. Oct. 9, 2021) ................................................................. 5, 10, 15

*SPV Osus Ltd. v. UBS AG*, 882 F.3d 333 (2d Cir. 2018) ..................................................... 7, 9, 11

*United States v. Whitehill*, No. 14-CV-188-RJA-MJR, 2018 WL 459300
    (W.D.N.Y. Jan. 18, 2018) ............................................................................................................ 8

*Ventricelli v Nicklin*, No. 1:19-cv-0230 (GTS/DJS), 2020 WL 132334
    (N.D.N.Y. Jan. 13, 2020) ........................................................................................................... 14

*Williams v. Kemper Independence Ins. Co.,* 476 F. Supp. 3d 958 (N.D. Cal. 2020)....................... 2

**Statutes**

11 U.S.C. § 101(5)(A)..................................................................................................................... 6

11 U.S.C. § 502(e)(1)(B).............................................................................................................. 10

28 U.S.C. § 1334............................................................................................................... *passim*

28 U.S.C. § 1441(a) ........................................................................................................................ 2

28 U.S.C. § 1447(c) ...................................................................................................................... 13

28 U.S.C. § 1452(a) ........................................................................................................................ 3

28 U.S.C. § 1452(b) ................................................................................................................ 13, 14

## MEMORANDUM OF POINTS AND AUTHORITIES

### SUMMARY OF THE ARGUMENTS

The opioid epidemic is a serious public health crisis that has ravaged this country. The resulting societal and economic damage has spurred a deluge of lawsuits and enforcement actions in recent years against those who have caused or contributed to this epidemic. McKinsey & Company, Inc. and McKinsey & Company, Inc. United States (together, "McKinsey") are two such entities. Plaintiffs, a group of New York counties and the City of New York,[1] sued McKinsey, whose principal office is in New York, in state court asserting exclusively state law tort claims (the "Action") based on McKinsey's role in marketing opioids manufactured by Purdue Pharma, L.P. ("Purdue") and its affiliates, as well as others. McKinsey removed the Action, arguing subject matter jurisdiction because it is "related to" Purdue's bankruptcy proceedings. McKinsey bases its argument on the fact that it is alleged to be a joint tortfeasor with Purdue and potentially has claims to indemnification or contribution from Purdue if judgment is entered against it in the Action.

McKinsey's arguments are without merit. To begin with, removal of the Action is expressly precluded under 28 U.S.C. § 1452(a) because Plaintiffs are governmental units seeking to enforce their police or regulatory powers. Nor is there "related to" jurisdiction. McKinsey forfeited any indemnification or contribution claims it may have had by failing to timely file proofs of claim in Purdue's bankruptcy proceedings. McKinsey also has no contribution claims because Plaintiffs' claims against McKinsey are not ones for which McKinsey would be entitled to contribution. Although McKinsey and Purdue may be joint tortfeasors, without any indemnification or contribution claims, McKinsey cannot demonstrate that Plaintiffs' Action could have any conceivable effect on Purdue's bankruptcy proceedings. Accordingly, there is no "related to" jurisdiction and the Action must be remanded pursuant to 28 U.S.C. § 1447(c).

Even assuming "related to" jurisdiction exists, the Court must abstain from hearing the Action because Plaintiffs' abstention request is timely and the Action (i) was commenced in state

---

[1] Plaintiffs are the City of New York and the following New York Counties: Suffolk; Broome; Columbia; Dutchess; Erie; Fulton; Greene; Herkimer; Lewis; Monroe; Montgomery; Ontario; Orange; Oswego; Schenectady; Seneca; St. Lawrence; Sullivan; Ulster; Washington; and, Wyoming.

court and asserts only state law claims, (ii) is not a core bankruptcy proceeding, (iii) provides no basis for federal jurisdiction other than 28 U.S.C. § 1334, and (iv) can be timely adjudicated in state court. The Court also can and should exercise its discretion to abstain and/or equitably remand the Action in the interests of justice or comity, or on any other equitable ground.

## **BACKGROUND**

In July 2017, the New York Litigation Coordinating Panel ordered that certain opioid-related cases pending in various counties of New York, and any similar cases later filed in New York, be coordinated for discovery and pretrial matters in the Supreme Court of Suffolk County ("NY Coordinated Litigation"). **Ex. 1** (NY Transfer Order), pp. 1-8. The Honorable Jerry Garguilo was appointed as State Coordinating Justice to oversee the NY Coordinated Litigation. *Id.* at p. 1. Purdue and several of its affiliates were among the defendants sued in the various actions in the NY Coordinated Litigation. *Id.*

In December 2017, the United States Judicial Panel on Multidistrict Litigation ("JPML") ordered the centralization of all opioid-related cases pending in federal courts around the country, as well as similar cases filed in the future, for coordinated pretrial proceedings in the District Court for the Northern District of Ohio ("Federal Opioid MDL"). *In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375 (U.S. Jud. Pan. Mult. Lit. 2017). The Honorable Dan A. Polster was assigned to oversee the Federal Opioid MDL. *Id.* at 1380. Purdue and several of its affiliates were among the defendants sued in the various actions in the Federal Opioid MDL. *See, e.g., id.* at 1380-82.

On September 15, 2019, Purdue and its affiliates filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (Dkt. #1 (Notice of Removal) at ¶ 5),[2] which is docketed as *In re Purdue Pharma L.P.*, No. 19-23649 ("Bkr. Dkt.").[3] The bankruptcy court set a deadline for filing proofs of claim—July 30, 2020 (the "Bar Date"). Bkr. Dkt. #800, p. 2; Bkr. Dkt. #1221, p. 2. Despite the Bar Date passing almost one year ago, to date McKinsey has not filed any proofs of claim in Purdue's bankruptcy. The bankruptcy court recently approved Purdue's disclosure statement (Bkr. Dkt. #2983) for its Fifth Amended Chapter 11 Plan (Bkr. Dkt. #2982) (the "Plan") and scheduled a confirmation hearing for that Plan on August 9, 2021. Bkr. Dkt. #2988-2989.

---

[2] Unless otherwise stated, docket entry citations are to 2:21-cv-03283-JS-SIL (E.D.N.Y.).

[3] Shortly thereafter, the bankruptcy court enjoined the continuation of all pending litigation by governmental and private plaintiffs against the Purdue debtors and certain "related parties" (*i.e.*, Purdue's former and current owners, directors, officers, employees, and other similar associated entities of the debtors). Bkr. Dkt. #89, #105.

On June 7, 2021, the JPML, at McKinsey's request,[4] ordered the centralization of certain federal opioid-related cases against McKinsey for coordinated pretrial proceedings in the District Court for the Northern District of California ("McKinsey MDL"). *In re McKinsey & Co., Inc., Nat'l Prescription Opiate Consultant Litig.*, No. MDL 2996, 2021 WL 2351628 (U.S. Jud. Pan. Mult. Lit. June 7, 2021). This Court was assigned to oversee the McKinsey MDL (*Id.* at *3), and is also currently overseeing a Federal Opioid MDL bellwether action brought by certain California municipalities against various opioid manufacturers, distributors, and a pharmacy ("California Remand Action"), that was remanded to him on February 5, 2020, and is set for trial in April 2022.

Plaintiffs filed their Action against McKinsey in the Supreme Court of the State of New York, County of Suffolk, on May 31, 2021. Dkt. #1-1 (Complaint). In their Action, Plaintiffs assert state law tort claims based on McKinsey's role in marketing opioids manufactured by Purdue. *Id.* McKinsey removed the Action to federal court on June 10, 2021, arguing that subject matter jurisdiction exists pursuant to 28 U.S.C. § 1334(b) because Plaintiffs' claims are "related to" Purdue's bankruptcy case. Dkt. #1. On July 6, 2021, this matter was formally transferred from the Eastern District of New York to this Court, under member docket number 3:21-cv-05183. Plaintiffs now respectfully submit this Motion for Remand or Abstention.

## **LEGAL STANDARD**

Removal from state court is permissible only if the federal court has original jurisdiction over the matter. 28 U.S.C. § 1441(a). "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). These limits, "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Id.* For that reason, removal statutes are narrowly construed, and all doubts must be resolved in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005); *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996); *Williams v. Kemper Independence Ins. Co.,* 476 F. Supp. 3d 958, 961 (N.D. Cal. 2020) (citing *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). The removing party bears the burden of demonstrating that federal

---

[4] McKinsey requested centralization in the Southern District of New York.

jurisdiction exists, and that removal was timely and proper. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

<u>**ARGUMENT**</u>

**I.     REMOVAL OF PLAINTIFFS' ACTION IS PRECLUDED UNDER 28 U.S.C. § 1452(A)**

McKinsey removed the Action pursuant to 28 U.S.C. § 1452(a), yet in quoting that statute (Dkt. #1 at ¶ 4), McKinsey omits the very language that precludes the Action's removal: "A party may remove any claim or cause of action in a civil action *other than . . . a civil action by a governmental unit to enforce such governmental unit's police or regulatory power . . .*" 28 U.S.C. § 1452(a) (emphasis added). As counties and cities, Plaintiffs are "governmental units." *See In re Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 488 F.3d 112, 132 (2d Cir. 2007) (finding "governmental unit" includes "municipalities," which, in turn, include "political subdivision or public agency or instrumentality of a State"). And the legal jurisprudence supports the conclusion that Plaintiffs' Action is intended to enforce their police or regulatory powers.

The Ninth Circuit has recognized that the terms "police or regulatory power" refers to "the enforcement of state laws affecting health, welfare, morals, and safety[.]'" *City & County of San Francisco v. PG & E Corp.,* 433 F.3d 1115, 1123 (9th Cir. 20006) (quoting *Hills Motor, Inc. v. Hawaii Auto. Dealrs' Ass'n,* 997 F.2d 581, 591 (9th Cir. 1993)). Here, Plaintiffs allege McKinsey's conduct contributed to the opioid epidemic, which has detrimentally impacted the health, welfare, and safety of their communities. Dkt. #1-1. They seek to abate the public nuisance created by McKinsey's conduct and recover costs incurred by them in providing public services to deal with the epidemic (*e.g.*, services for families/children, public health, public assistance, law enforcement, emergency care, etc.). *Id*. at pp. 28, 32. Courts of this District and others have held that similar actions fall within the "police or regulatory power" exception to removal under § 1452(a). *See, e.g., Cty. of San Mateo v. Chevron Corp.*, 294 F. Supp. 3d 934, 938–39 (N.D. Cal. 2018) ("[B]ankruptcy removal d[oes] not apply because [the city and counties'] suits [alleging nuisance, negligence, and products liability] are aimed at protecting the public safety and welfare and brought on behalf of the public."), *aff'd in part on other grounds, appeal dismissed in part,* 960 F.3d 586 (9th Cir. 2020); *MTBE*, 488 F.3d at 114-15, 132–34 (claims asserted by states against defendants whose discharge

of gasoline containing MTBE contaminated groundwater fell "within the 'police or regulatory power' exception to removal under section 1452");[5] *Mayor & City Council of Baltimore v. BP P.L.C.*, 388 F. Supp. 3d 538, 548, 571–72 (D. Md. 2019), *as amended* (June 20, 2019) (city's claims for, *inter alia,* nuisance against energy companies for injuries stemming from climate change "falls squarely within the police or regulatory exception to § 1452"), *aff'd on other grounds,* 952 F.3d 452 (4th Cir. 2020), *cert. granted,* 141 S. Ct. 222, 207 L. Ed. 2d 1165 (2020); *Bd. of Cty. Comm'rs of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 405 F. Supp. 3d 947, 954-55, 981 (D. Colo. 2019) (city and counties' nuisance, trespass, unjust enrichment, Colorado Consumer Protection Act, and conspiracy claims fall within W1452 exception), *aff'd in part on other grounds, appeal dismissed in part,* 965 F.3d 792 (10th Cir. 2020).

Accordingly, the Action falls with the governmental unit's police or regulatory power exception under Section 1452(a).

## II.     THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE ACTION

Even if the Action does not fall within an exception to removal, it must be remanded for lack of subject matter jurisdiction. In its Notice of Removal, McKinsey's sole basis for jurisdiction is § 1334(b), which gives federal district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). McKinsey claims the Action is "related to" Purdue's bankruptcy. Dkt. #1 at ¶ 5.[6] In this Circuit, a civil proceeding is related to a title 11 case if "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Valdez Fisheries Development Ass'n, Inc.*, 439 F.3d 545, 547 (9th Cir. 2006) (quotations and citations omitted). An action has a conceivable effect if the outcome could "alter the debtor's rights, liabilities, options, or freedom of action …[or] in any way impact[] upon the handling and administration of the

---

[5] The claims in *MTBE* included public nuisance, strict products liability, negligence, trespass, false advertising, unfair business practices, and conspiracy. *See In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.* (*State of California, et al., v. Atlantic Richfield Co., et al.*), No. 04-5974-CV, 2005 WL 6060836, at *3-4 (2d Cir. Sept. 20, 2005); *In Re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.* (*State of New Hampshire v. Amerada Hess Corp., et al.*), No. 04-6056-cv, 2005 WL 6060834, at *10-11 (2d Cir. Sept. 20, 2005).

[6] McKinsey does not argue that Plaintiffs' claims arise under, or arise in a case under, title 11.

bankrupt estate." *Id.* (brackets in original) (quotations and citations omitted). The Supreme Court has cautioned, however, that "'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). "Thus, any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude 'related to' jurisdiction." *Sealink Funding Ltd. v. Bear Stearns & Co. Inc.*, No. 12 Civ. 1397 (LTS) (HBP), 2012 WL 4794450, at *2 (S.D.N.Y. Oct. 9, 2021) (quotations omitted).

In this case, McKinsey argues that there is "related to" jurisdiction because: (i) "Plaintiffs' allegations against McKinsey are highly interconnected with the conduct and actions of Purdue[,]" and thus, "[r]esolution of the Plaintiffs' claims against McKinsey may therefore alter Purdue's rights and liabilities as a bankruptcy debtor[;]" and (ii) "Plaintiffs' claims in this Action, if successful, could also give rise to indemnification and/or contribution claims by McKinsey against Purdue and therefore may affect property of Purdue's bankruptcy estate." Dkt. #1 at ¶ 16. McKinsey's arguments have no merit and should be rejected.

**A. McKinsey's indemnification claims do not support the exercise of "related to" jurisdiction because McKinsey has no reasonable legal basis for those claims.**

McKinsey claims it entered into a 2004 indemnification agreement with Purdue under which "Purdue contractually agreed to indemnify McKinsey for all claims brought by third parties against Purdue and/or McKinsey (including reasonable legal fees) arising out of its services to Purdue." Dkt. #1 at ¶ 15. Notably, McKinsey fails to attach this indemnification agreement to its Notice of Removal. *Id.* Regardless, Purdue's purported indemnification obligations to McKinsey do not give rise to "related to" jurisdiction in this case.

The potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings; particularly where there is no reasonable basis to support the claim. *See, e.g. Contra Costa County v Fitch, Inc.*, No. C 10-05318 JSW, 2011 WL 13247847, at *3-5 (N.D. Cal. Jan. 31, 2011) (rejecting potential claim for indemnification as to removed and attenuated to have conceivable effects on bankruptcy proceeding); *MBIA Insurance Corporation v Indymac ABS, Inc. ("MBIA"),* No. CV 09-07737 SJO (PJWx), 2009 WL 10675774, at *2 (C.D. Cal. Dec. 23, 2009) (rejecting hypothetical contingent claims as basis for "related to" jurisdiction). Here, there is no reasonable legal basis for McKinsey's indemnification claims against

Purdue because it forfeited any such claims by failing to file a timely proof of claim in Purdue's bankruptcy. A potential indemnification claim against a debtor cannot affect the estate if the creditor has not properly asserted that claim in the bankruptcy proceedings.

The Federal Rules of Bankruptcy Procedure require bankruptcy courts to set a bar date, the time within which proofs of claims or interest may be filed. FED. R. BANKR. P. 3003(c)(3). Under the Bankruptcy Code, a "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" 11 U.S.C. § 101(5)(A). The term is construed broadly (*see Siegel v. Federal Home Loan Mortg. Corp.*, 143 F.3d 525, 532 (9th Cir. 1998)), and it is well established that a "claim" can exist under the Bankruptcy Code before a right to payment exists under non-bankruptcy law. *In re Motors Liquidation Co. ("Motors"),* 598 B.R. 744, 754 (Bankr. S.D.N.Y. 2019) (citing *In re Grossman's Inc.*, 607 F.3d 114, 121 (3d Cir. 2010)).

Once the bar date has passed, a creditor requires leave from the bankruptcy court to file a late-filed claim, which can be granted only if the creditor demonstrates that its failure to meet the bar date "was the result of excusable neglect." FED. R. BANKR. P. 9006(b)(1). To determine "excusable neglect" courts take into account all relevant circumstances surrounding the party's omission. *Pioneer Inv. Services Co. v. Brunswick Associates ltd. Partnership,* 507 U.S. 380, 396 (1993). This includes consideration of "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

In this case, the Bar Date was July 30, 2020 (*supra* at p. 1) and McKinsey was sent notice of the Bar Date on February 18, 2020. **Ex. 2** (Aff. of Service) at p. 2 & Ex. I.[7] In that notice, McKinsey was informed (i) that any claims based on prepetition conduct of the Debtors "must be filed on or prior to the General Bar Date, even if such claims are not now fixed, liquidated, or certain or did not mature or become fixed, liquidated, or certain before the Petition Date[,]" and (ii) that the term "claim" included any contingent rights to payment. *Id*. at Ex. B, p. 2. Despite this notice, McKinsey failed to file any proof of claim for its contingent indemnification claim prior to

---

[7] Purdue also undertook broad publication notice. Bkr. Dkt. #2488 at pp. 45-46.

the Bar Date. Indeed, to date, McKinsey has not filed **any** proofs of claim in Purdue's bankruptcy.[8]

McKinsey cannot remedy this defect in its removal by filing the necessary proofs of claim now. As noted above, McKinsey would require leave from the bankruptcy court to submit a late-filed claim, but "[e]xcusable neglect does not excuse the failure to file [a] proof of claim for an indemnification liability by the bar date[.]" *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 341 (2d Cir. 2018); *see also Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC)*, No. 11 Civ. 2232 (NRB), 2011 WL 4965150, at *4-5 (S.D.N.Y. Oct. 19, 2011) (defendants cannot "overcome the passage of the bar dates" where "defendants could, and should, have asserted their indemnification claims prior to the bar dates"). This is because "[a]n indemnification right arises at the time the indemnification agreement is executed, and it constitutes a claim under the Bankruptcy Code even if the act giving rise to indemnification has not yet occurred." *Id.* (quotations omitted). According to McKinsey, the indemnification agreement was executed in 2004, well before Purdue filed for bankruptcy in September 2019. Dkt. #1 at ¶¶ 5, 15. Similarly, all of the conduct forming the basis of any potential indemnification claim occurred prepetition. Dkt. #1-1 (Complaint). Thus, any indemnification rights arising from such agreement constituted a contingent prepetition claim for which McKinsey was obligated to file a proof of claim. *See Allstate*, 2011 WL 4965150, at *5. Because McKinsey failed to file a proof of claim, and such failure cannot be excused by "excusable neglect," any indemnification claim McKinsey may have had has been forfeited and cannot "have any 'conceivable effect' on [Purdue's bankruptcy] estate." *SPV*, 882 F.3d at 341.

The cases cited by McKinsey are factually distinguishable because they did not involve indemnification claims that had been forfeited by the creditor.[9]

---

[8] *See* https://restructuring.primeclerk.com/purduepharma/Home-ClaimInfo.

[9] *See In re Purdue Pharm. L.P.*, 619 B.R. 38, 52-55 (S.D.N.Y. 2020) (potential indemnification and contribution claim of non-debtor defendant supported "related to" jurisdiction where non-debtor timely filed proofs of claim in bankruptcy court) (**Ex. 3** (Sackler POC) at Addendum, ¶ 3); *In re WorldCom, Inc. Securities Litig.*, 293 B.R. 308, 320-21 (Bankr. S.D.N.Y. 2003) (defendants filed proofs of claim for indemnity, contribution, and reimbursement for defense costs and no indication that filings were untimely); *In re SunEdison, Inc.*, 576 B.R. 453, 455, 461-63 (Bankr. S.D.N.Y. 2017) (potential indemnification claims of various non-debtor third parties were sufficient to give the court subject matter jurisdiction; importantly, third parties in that case were entitled to vote on the Plan, meaning they had either filed proofs of claim or their claims were identified in the debtors' schedules and not listed as "disputed, contingent, or unliquidated[.]")

**B. McKinsey's contribution claims do not support the exercise of "related to" jurisdiction because McKinsey has no reasonable legal basis for those claims.**

As with indemnification claims, a potential contribution claim by third-party defendants against the debtor will not give rise to "related to" jurisdiction over an action to which the debtor is not a party when the alleged contribution claim is hypothetical with almost no factual support. *See MBIA*, 2009 WL 10675774 at *1. Just like with its purported indemnification claims, and as discussed further below, McKinsey has forfeited any contingent contribution claims it may have had by failing to file proofs of claim prior to the Bar Date. But McKinsey's contribution claims also fail for a more fundamental reason: the claims asserted by Plaintiffs against McKinsey in the Action are *not* claims for which McKinsey is entitled to contribution.

Pursuant to New York statute, with some exceptions not relevant here,

> two or more persons who are subject to liability for *damages for the same personal injury, injury to property or wrongful death*, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. C.P.L.R. 1401 (emphasis added). Here, Plaintiffs do not seek any damages for "personal injury, injury to property or wrongful death[,]" but rather for the *economic loss* suffered by Plaintiffs in dealing with the opioid epidemic, as well as punitive damages. Dkt. #1-1 at p. 32.[10]

In New York, "the touchstone for purposes of whether one can seek contribution is not the nature of the claim in the underlying complaint but the measure of damages sought therein." *Dillon v. Peak Envtl., LLC*, 173 A.D.3d 1637, 1638 (N.Y. App. 2019) (quotations omitted). Contribution is not available "where the underlying action is for breach of contract *or where the damages sought are purely for economic loss*." *Dillon*, 173 A.D.3d at 1638 (emphasis added) (quotations omitted).[11]

---

(quoting FED. R. BANKR. P. 3003(c)).

[10] Plaintiffs also seek the equitable remedy of abatement, which is not considered "damages." *See, e.g, New York v. W. Side Corp.*, 790 F. Supp. 2d 13, 29-30 (E.D.N.Y. 2011); *N.A.A.C.P. v. Acusport Corp.*, 226 F. Supp. 2d 391, 397 (E.D.N.Y. 2002); *cf. United States v. Whitehill*, No. 14-CV-188-RJA-MJR, 2018 WL 459300, at *3 (W.D.N.Y. Jan. 18, 2018).

[11] The New York Court of Appeals has not specifically addressed whether purely economic loss resulting from tortious conduct falls outside of CPLR 1401, but it has held that "purely economic loss resulting from a breach of contract does not constitute 'injury to property' within the meaning of New York's contribution statute[.]" *Bd. of Educ. of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley*, 517 N.E.2d 1360, 1363 (N.Y. 1987).

Nor may contribution be sought for punitive damages. *See Haas v. Tishman Const. Corp. of New York*, No. 83 CIV. 7601 (CBM), 1987 WL 5792, at *5 (S.D.N.Y. Jan. 13, 1987).

Moreover, even if McKinsey was entitled to contribution from Purdue for Plaintiffs' causes of action, any such contribution claims have been forfeited by McKinsey's failure to file a proof of claim before the Bar Date. Admittedly, "contribution claims do not accrue until after liability is established" and "[a] party may not know of a potential contribution claim until sued, which may be years after the bankruptcy proceedings have commenced." *SPV*, 882 F.3d at 340. Under those circumstances, a claimant may have "a credible basis for defendants to petition the bankruptcy court for leave to file a late proof of claim based on excusable neglect." *Id*. at 340–41 (excusable neglect where suit against UBS was filed nearly 5 ½ years after the bar date). But here, unlike in *SPV*, McKinsey was on notice well before the July 30, 2020 Bar Date that it might be sued based on the prepetition opioid-related work it performed for Purdue. Indeed, McKinsey admitted in legal filings that it knew as early as 2019 that it may be sued regarding the work it performed for various opioid manufacturers, including Purdue.[12] Given that McKinsey was on notice of its potential contribution claims, and it also received sufficient notice of the Bar Date, it has no "credible basis ... to petition the bankruptcy court for leave to file a late proof of claim based on excusable neglect." *SPV*, 882 F.3d at 340–41; *see also Motors,* 598 B.R. at 753 (noting that creditors, like McKinsey, have the "'responsibility to diligently investigate what claims they may have against the debtor") (citations omitted).[13] It was therefore within McKinsey's control to file its claim before the Bar

---

[12] **Ex. 4** (Mot. to Enter Consent Order), pp. 2-3. Moreover, in January 2019, detailed information regarding McKinsey's involvement in Purdue's opioid business made national news due to the unsealing of certain documents in a lawsuit against Purdue. *See also* Julia Lurie, *A Damning New Report Says McKinsey Allegedly Helped Purdue Sell Even More Opioids*, Mother Jones (Jan. 31, 2019), *available at* https://www.motherjones.com/politics/2019/01/report-mckinsey-consulting-purdue-pharma-opioid-crisis/; David Armstrong, *OxyContin Maker Explored Expansion Into "Attractive" Anti-Addiction Market*, ProPublica (Jan. 30, 2019), *available at* https://www.propublica.org/article/oxycontin-purdue-pharma-massachusetts-lawsuit-anti-addiction-market.

[13] McKinsey's position as a sophisticated company represented by sophisticated counsel further negates any claim of excusable neglect. *See* https://www.mckinsey.com/about-us/overview (asserting that McKinsey is an international consulting firm with 90+ years experience with approximately 30,000 employees working in 130 cities); https://www.stroock.com/news-and-insights/tales-of-a-top-tier-fr-practice-full-speed-in-the-pandemic-economy (touting McKinsey

Date and there is no legitimate reason for its delay.[14] Further, allowing McKinsey to file its proofs of claim past the Bar Date would prejudice the debtors because it could "open the floodgates to other similarly situated creditors." *In re AMR Corp.*, 492 B.R. 660, 667-68 (Bankr. S.D.N.Y. 2013) (citing *In re Enron Corp.*, 419 F.3d 115, 132 n.2 (2d Cir. 2005).

Accordingly, McKinsey has no reasonable legal basis to believe that the bankruptcy court would let it file a late contribution claim. And even in the unlikely event that it did, McKinsey would face several additional hurdles before the claim could ever have an effect on the bankruptcy estate. Under the Bankruptcy Code, contribution claims that are "contingent as of the time of [their] allowance or disallowance" are disallowed. 11 U.S.C. § 502(e)(1)(B); *Motors*, 598 B.R. at 759–61. Here, any potential contribution claim arising from the Action would remain contingent until judgment is entered against, and paid by, McKinsey. Since the Action was only filed recently, that is unlikely to happen anytime soon. Moreover, the Purdue debtors' proposed Plan designates "Co-Defendant Claims," including contribution and indemnification claims, as Class 14 claims that are to be released or distinguished, and for which *no distributions* will be made from the bankruptcy estate. Bkr. Dkt. #2982, pp. 5, 42, 51. Thus, it is reasonable to infer that even if McKinsey was entitled to contribution under New York law, and even if it was permitted to submit a late-filed claim in the bankruptcy proceedings, such claim would be disallowed under § 502(e)(1)(B) and/or pursuant to the terms of Purdue's Plan (if approved) or other subordination provisions under the Bankruptcy Code. Given the number of "links in the chain" that must be satisfied before the bankruptcy estate could ever be affected, McKinsey's contribution claims are too remote and speculative to create "related to" jurisdiction. *See Sealink*, 2012 WL 4794450, at *2.

### C. McKinsey's mere status as a joint tortfeasor with Purdue does not give rise to "related to" jurisdiction.

McKinsey argues that there is "related to" jurisdiction because McKinsey and Purdue are alleged to be joint tortfeasors and there is a "strong interconnection" between the Action and

---

counsel, Stroock & Stroock & Lavan LLP, as a "top-ranked Financial Restructuring team" with extensive work in bankruptcy-related matters); *Motors*, 598 B.R. at 758.

[14] Indeed, McKinsey has yet to request leave to file any potential claims against Purdue, despite it being almost one year since the Bar Date passed.

Purdue's bankruptcy. Dkt. #1 at pp. 3-7. But standing alone, any connections and factual overlap do not establish the conceivable effect on the bankruptcy estate necessary to create "related to" jurisdiction. *McMillan v. Barclays Bank PLC*, No. 1:13-cv-01095 (ALC) (DF), 2014 WL 4364053, at *3 (S.D.N.Y. Sept. 3, 2014) ("Standing alone, '[o]verlap between the bankrupt's affairs and another dispute is insufficient[.]'") (quoting *Homes Ins. Co. v. Cooper & Cooper Ltd.*, 889 F.2d 746, 749 (7th Cir. 1989)).

It is not surprising that "'the existence of strong interconnections between the third-party action and the bankruptcy has been cited frequently by courts in concluding that the third-party litigation is related to the bankruptcy proceeding.'" *SPV*, 882 F.3d at 342 (quoting *WorldCom*, 293 B.R. at 321). Such cases typically give rise to contribution or indemnification claims by the co-tortfeasor against the debtor, which in turn could alter the debtor's liabilities in the bankruptcy proceeding. Indeed, this is true in each of the cases McKinsey cites.[15] But as noted above, there is not merit to McKinsey's purported indemnification and contribution claims.

Insofar as McKinsey seeks to rely on *Purdue*, that case is factually distinguishable. In *Purdue*, plaintiffs sued the debtor (Purdue) and the debtor's former officer (Dr. Sackler) in state court (the "*Dunaway* Action") for damages under a Tennessee statute. 619 B.R. 38. In the bankruptcy proceedings, at the debtors' request, the bankruptcy court issued a preliminary injunction enjoining all governmental and private plaintiffs from continuing or commencing any actions against the debtors or against any "non-debtor Related Parties," which included Purdue's former officers. *Id*. at 41-42. The *Dunaway* plaintiffs appealed, asking the district court to vacate the injunction as to their claims against Dr. Sackler because the bankruptcy court lacked "subject matter jurisdiction over a government enforcement action between state officials and a third party non-debtor[.]" *Id*. at 42. The court found plaintiffs' claims against Dr. Sackler to be "related to" the bankruptcy proceeding for two reasons. One was the existence of possible contribution and

---

[15] *See SPV*, 882 F.3d at 340-41 (co-tortfeasor had credible contingent contribution claim against debtor); *Purdue*, 619 B.R. at 51-55 (conceivable that co-tortfeasor had contribution or indemnification claims against the debtor); *WorldCom*, 293 B.R. at 321 (intertwined conduct of defendants and debtor were "necessarily interconnected with these [d]efendants' rights to contribution" which could conceivably affect bankruptcy estate).

indemnification claims against the debtor. *Id*. at 51-55. The other was the strong interconnection between the *Dunaway* Action and the bankruptcy, due to the fact that, at its core, the *Dunaway* Action "rest[ed] on the theory that Purdue and its employees committed misconduct *at the direction of Dr. Sackler* and others *who controlled the corporation and its actions*." *Id*. at 49-51 (emphasis added). Because "Purdue's liability as a corporate entity, to the extent it can be proven, must be proven through the acts of its officers and directors[,]" any "finding of liability against Dr. Sackler arising from his work on behalf of Purdue is equivalent to finding that Purdue itself is liable under the [statute]." *Id*. at 50. Moreover, Purdue's "bankruptcy was [specifically] designed to consolidate all of the[ ] proceedings against the Debtors, as well as the claims against [the non-debtor Related Parties], so that the parties could work towards a global settlement in a single forum." *Id*. at 41.

Here, McKinsey has no indemnification or contribution claims against Purdue, nor is it a "non-debtor Related Party" like Dr. Sackler. Moreover, while Plaintiffs have filed proofs of claim in Purdue's bankruptcy, the amount of money they receive from the estate will not be affected by any recovery in the Action. Under Purdue's proposed Plan, the claims of governmental entities will be paid from an opioid abatement trust created by the debtors. Bkr. Dkt. #2982 at p. 22 & § 5.7; Bkr. Dkt. #2977. Each state will receive a set percentage allocation of the funds.[16] Then, either a default sharing mechanism (that is not tied to claim amounts) would apply or the state would work out a separate agreement with its local governments on how to allocate the funds internally within the state. Bkr. Dkt. #2977 at pp. 4-10. In other words, neither the amount of Plaintiffs' claims nor any recovery they receive from McKinsey will have any impact on the amount of funds disbursed from the estate to the state of New York.[17]

---

[16] The percentage allocation is calculated by: (i) the amount of prescription opioids sold in the state as measured by MME; (ii) the number of people in the state with pain reliever use disorder; (iii) the number of overdose deaths in the state; (iv) the population of the state; and (v) the Opioid MDL Plaintiffs' proposed "negotiation class" metrics. Bkr. Dkt. #2977 at pp. 29-31.

[17] Even in the unlikely event that the proposed Plan (or one similar to it) is not confirmed, there is no basis to believe that Plaintiffs' recovery against McKinsey will affect their bankruptcy claims against Purdue. First, Plaintiffs would have to actually receive a recovery from McKinsey before their bankruptcy claims are adjudicated, which is highly unlikely. Plaintiffs' case against McKinsey is in its infancy and should they prevail McKinsey will likely pursue appellate remedies. And even if Plaintiffs did receive money from McKinsey first, the only reason to reduce Plaintiffs' claims in the bankruptcy would be to prevent a double recovery. Over 614,000 proofs of claim were timely

Accordingly, there is no reasonable legal basis for believing that the Action's outcome could have any conceivable effect on Purdue's bankruptcy estate.

### III. ALTERNATIVELY, THIS COURT SHOULD ABSTAIN AND REMAND THE CLAIMS AGAINST MCKINSEY.

Even assuming that there is "related to" jurisdiction, abstention is required under 28 U.S.C. § 1334(c)(2) and/or warranted in the exercise of discretion under 28 U.S.C. § 1334(c)(1). Moreover, the case should be remanded on equitable grounds. 28 U.S.C. § 1452(b).

#### A. Section 1334(c)(2) requires mandatory abstention in this case.

Pursuant to § 1334(c)(2), this Court must abstain from hearing the removed Action if the following six elements are satisfied:

> (1) a party files a timely motion; (2) the proceeding is based on a state law claim or cause of action; (3) the matter is merely "related to" a bankruptcy case (i e, it is not a "core" proceeding "arising under" the bankruptcy laws or "arising in" a bankruptcy case); (4) the matter otherwise could not have been brought in federal court absent jurisdiction under section 1334 as a bankruptcy related matter; (5) a state court action has commenced and (6) the state court action can be timely adjudicated.

*Kennilworth Partners II LP v. Crisman*, No. C-00-3218 VRW, 2001 WL 30534, at *1 (N.D. Cal. Jan. 3, 2001) (citations omitted).

These elements resolve in Plaintiffs favor: Plaintiffs' motion is timely, as it was filed less than 30 days after McKinsey filed its Notice of Removal (*see* 28 U.S.C. § 1447(c)); Plaintiffs commenced the Action in state court and assert only state law claims (*see* Dkt. #1-1); the Action is not a core proceeding as it does not invoke a substantive right created by the federal bankruptcy law and is one that can exist outside of bankruptcy (*see In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995));[18] there is no other basis for federal jurisdiction, e.g. either federal question or diversity jurisdiction, as all claims are predicated on state law and all parties are New York

---

filed against Purdue alleging opioid-related liability, ~90% of which did not state a claim amount. Bkr. Dkt. #2983 at p. 25. The remaining 10% that did state a claim amount asserted claims of over $140 *trillion*. *Id*. In their disclosure statement, the Purdue debtors estimate that ~$5 billion in value will be provided to the abatement trusts under their Plan; substantially less value would be available if the estate was liquidated. *Id*. at pp. 2-3 & Appx. B, Ex. 1. Thus, Plaintiffs, whose proofs of claim collectively total more than $48 billion, can at best expect pennies on the dollar for those claims whether or not the Plan is confirmed. There is no legitimate risk of a double recovery.

[18] McKinsey does not claim the Action is a core proceeding in its Notice of Removal. Dkt. #1.

residents;[19] and, "[b]ecause each of plaintiff's claims is based on state law, … the state court will likely be a more efficient forum for adjudication of the claims...." (*Kennilworth,* 2001 WL 30534 at *4). As to the final element, Plaintiffs note that Judge Garguilo has been overseeing the NY Coordinated Litigation for approximately four years, including management of extensive discovery related to the marketing of opioids in New York and has issued a number of rulings on pretrial motions addressing many of the same complex legal issues *under New York law* that will arise in the Action.[20] Judge Garguilo is also familiar with the factual allegations against Purdue, as it was an active defendant in the cases before him until it filed for bankruptcy in September 2019.[21] Thus, Judge Garguilo would be expected to adjudicate the matter effectively and efficiently because he has greater familiarity with both the relevant areas of New York law and the record. *See Ventricelli v Nicklin*, No. 1:19-cv-0230 (GTS/DJS), 2020 WL 132334, at *4 (N.D.N.Y. Jan. 13, 2020) ("Absent contrary evidence, a federal court must presume that a state court will operate efficiently and effectively in adjudicating the matters before it") (quotations omitted).

### B. This Court should exercise its discretion to permissively abstain from hearing the Action and/or equitably remand the Action.

This Court also has the discretion to: (i) abstain from hearing the Action "in the interest of justice, or in the interest of comity with State courts or respect for State law[;]" and/or (ii) remand the Action "on any equitable ground." 28 U.S.C. § 1334(c)(1); 28 U.S.C. § 1452(b). In considering whether to exercise its discretion to do either, courts generally consider:

(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted 'core' proceeding; (8) the feasibility of severing state law claims from core bankruptcy

---

[19] McKinsey has not argued that there is any other basis for federal jurisdiction. Dkt. #1.

[20] *See, e.g., In re Opioid Litigation*, No. 400000/2017, 2018 WL 3115102 (N.Y. Sup. Ct. June 18, 2018) (ruling on motions to dismiss filed by opioid manufacturers, including Purdue); *In re Opioid Litigation*, No. 400000/2017, 2019 WL 2996570 (N.Y. Sup. Ct. June 21, 2019); *In re Opioid Litigation*, No. 400000/2017, 2020 WL 8011988 (N.Y. Sup. Ct. Feb. 03, 2020).

[21] *Id*; *In re Opioid Litigation*, No. 400000/2017, 2019 WL 2996569 (N.Y. Sup. Ct. June 21, 2019).

matters to allow judgment to be entered in state court with enforcement left to the bankruptcy Court; (9) the burden [of the bankruptcy court's] docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re Tucson Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990) (modifications in original).

These factors weigh in favor of abstention and equitable remand. As discussed above (*supra* at § III.A), abstention would have no effect on Purdue's estate. Additionally, there are no bankruptcy issues raised in the Action; the claims are all state law claims against a non-debtor, and some of the legal issues are complex. Likewise, the remaining factors weigh in favor of abstention/equitable remand: (i) there are related opioid cases before Justice Garguilo that raise many of the same legal and factual issues; (ii) there is no basis for jurisdiction in federal court aside from § 1334 (*supra* at pp. 13-14); (iii) the Action is not a "core" proceeding, nor does it involve any "core bankruptcy matters" that must be enforced by the bankruptcy court (*supra* at p. 13);[22] (iv) the only parties to the Action are non-debtors; (v) "[c]omity as a general matter counsels leaving matters of state law to state courts[,]"[23] and the Action "concerns uniquely local matters" that a New York state court has a greater interest in resolving than does a federal court across the country;[24] (vi) there will be an increased risk of inconsistent results if the Action is not remanded;[25] and (vii) in addition to denying Plaintiffs their choice of forum, the delay and unnecessary expense associated with participating in a new MDL across the country would prejudice Plaintiffs.

---

[22] Purdue's main bankruptcy case is focused on its reorganization, not resolving whether Purdue's opioid manufacturing, marketing, and distribution conduct violated New York law. Thus, this factor weighs in favor of abstention.

[23] *See, e.g. Sealink*, 2012 WL 4794450, at *4.

[24] *Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. P'Ship,* No. 4 Civ. 708(GEL), 04 Civ. 709(GEL), 04 Civ. 710(GEL), 2004 WL 1048239, at *6 (S.D.N.Y. May 7, 2004) ("The notion that a federal court in another region of the country, rather than a state court in New York County, should resolve disputes about a residential apartment building in New York City verges on the bizarre. The local significance of these cases argues strongly for returning the matter to the state courts.").

[25] As previously noted, Justice Garguilo has been overseeing New York opioid cases for several years and has already issued a number of substantive rulings, applying New York law, that will be directly applicable to Plaintiffs' claims in the Action. *Supra* at p. 14.

# CONCLUSION

For these reasons, Plaintiffs request that the Court remand the Action to state court.

Dated: July 9, 2021

Respectfully submitted,

SIMMONS HANLY CONROY

*/s/ Jayne Conroy*
Jayne Conroy
Thomas I. Sheridan, III
Andrea Bierstein
Justin Presnal (*pro hac vice* forthcoming)
SIMMONS HANLY CONROY LLC
112 Madison Avenue
New York, NY 10016
(212) 784-6401
jconroy@simmonsfirm.com
tsheridan@simmonsfirm.com
abierstein@simmonsfirm.com
jpresnal@simmonsfirm.com

*Counsel for Plaintiffs*

1    **<u>CERTIFICATE OF SERVICE</u>**

2          The undersigned hereby certifies that on July 9, 2021, I electronically transmitted the

3    attached document to the Clerk of the Court using the ECF System for filing.  Based on the records

4    currently on file, the Clerk of Court will also transmit a Notice of Electronic Filing to all counsel

5    of record.

6

7                                                  */s/ Jayne Conroy*
                                                    Jayne Conroy
8                                                  Simmons Hanly Conroy LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Memorandum of Points and
Authorities ISO of Motion for Remand or
Abstention                                                    Case No. 3:21-cv-05183-CRB